George W. Taylor vs. Almanda & Bro.

## No. 12,462.

### GEORGE W. TAYLOR VS. ALMANDA & BRO.

The court again affirms that the amount claimed by plaintiff is the test of jurisdiction of this court of the incidental demands. 11 La. R. 463; 8 La. 167.

The plaintiff suing on the commutative contract can recover for partial performance, but the measure of recovery is necessarily not the contract price, but the benefit the proof shows the defendant derived from the partial performance. 3 La. 1; 4 La. 465; 7 La. 134.

An attachment will not lie of funds brought within this jurisdiction of this court to pay the debt binding on the attaching creditor and which payment he seeks to defeat by his attachment.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*E. W. Huntington* and *Edward Barrett* for Plaintiff, Appellant.

*Lamar C. Quintero* for Defendants and Appellees.

*Wm. C. Dufour* and *Geo. W. Moore* for A. G. Slangerup, Intervenor, Appellee.

*Dart & Kernan* for Thomas Killeen, Intervenor, Appellee.

*Chas. J. Théard* and *John Clegg* for Liquidators of the Bank of Commerce, Intervenors, Appellees.

*John Dymond*, Jr., for Barthelemy, Intervenor, Appellee.

Submitted on briefs December 3, 1897.
Opinion handed down December 28, 1897.
Rehearing refused April 4, 1898.

The opinion of the court was delivered by

MILLER, J. The appeal is by plaintiff from the judgment dismissing his suit and accompanying attachment for the amounts claimed to be due him on his contract to furnish defendants with a sugar mill and

appurtenances, and for extra or additional machinery he alleges was obtained from him by defendants.

The contract made by W. R. Taylor, "agent," with defendants provides that the mill on the Rosehill plantation is purchased by them from Taylor; is by him to be shipped to defendants in Mexico, the price, ten thousand dollars, to be paid one-half cash when the contract is signed, the residue in equal instalments, one in sixty days and the other when the mill is erected on defendants' plantation, Taylor to provide the engineer for the erection of the mill, and defendants to furnish certain materials and fulfil other obligations incident to the putting up of the mill. The defendants supposed Taylor was the owner of the mill, but it transpired afterward he was not, but had an agreement to buy from the owner of the plantation on which the mill was placed. The defendants complained of delay, in executing the contract, and with greater reason as they conceived because on the faith of it they had paid W. R. Taylor the greater portion of the ten thousand dollars. When defendant learned not only Taylor was not the owner of the mill, but having an arrangement to buy it had not completed its purchase, they became alarmed, not only for their crop dependent on the mill for which they had contracted, but apprehensive of the loss of the large amount of their money paid W. R. Taylor in advance of any delivery. Thereupon, defendants employed an attorney, brought about a meeting of W. R. Taylor and the mill owner anxious to sell, but unwilling to deliver the mill without payment of the price, and this action of defendants and their vigorous demand that the mill owner should be paid at once by Taylor, and for the fulfilment of his contract to ship the mill, resulted in his payment for the mill and its shipment to defendants late in the fall and more than ninety days after his contract. The mill appurtenances included in Taylor's contract were to be made by the machinist employed by Taylor, and defendants about the same time they ascertained the cause of the delay in delivering the mill, learned also that the machinist not paid, would not deliver the appurtenances without payment. Thereupon, after some discussion and an effort to obtain the appurtenances, the defendants were compelled to give their notes to the machinist for the amount due by Taylor on his contract with the machinist. After all this action on the part of defendants in respect to the mill and machinery Taylor had bound himself to furnish, the property was

finally shipped to defendants' plantation in Mexico. Defendants have provided the funds here to pay their notes, but Taylor through his agent in Mexico urging defendants to remit the funds for payment of the notes and informed as soon as it was made of the bank to which the money was sent, attached the funds when they reached here and thus seeks to defeat their application to pay the notes. This brought forward the note holders to resist his pretensions by their interventions in this case. They aver their right to the funds under the facts and the instructions to the bank accompanying the remittance, and they aver that W. R. Taylor and his principal are estopped from contesting the application of the remittance to pay the notes. The controversy thus presents the issues of the right of plaintiff to recover on his contract with defendants, and whether the plaintiff can attach the funds remitted under the circumstances shown by the record to pay the debt Taylor was bound to pay and for which defendants by his default had to provide.

The plaintiff in his petition charges defendants with the contract price, ten thousand dollars, and with items for alleged extras claimed to have been furnished defendants; he gives them credit for seven thousand two hundred dollars, paid by them and for the notes they gave, and sues for the residue, two thousand four hundred dollars, he alleges is due. The defendants deny the execution of the contract; allege there was no contract with plaintiff, that he is merely interposed by the real party to the contract, W. R. Taylor; there is the averment of losses sustained by defendants by the non-execution of the contract on which plaintiff sues, and the defendants reconvening claim heavy damages. The note holders in their interventions allege the circumstances under which defendants issued their notes and remitted the funds for their payment, aver their right to the funds and that plaintiff is estopped by his conduct from levying on the funds under his attachment.

There is a motion to dismiss plaintiff's appeal, and in support of this dismissal it is urged the amount involved is below the jurisdictional limit of this court. The motion overlooks the amount claimed by plaintiff in excess of two thousand dollars, which carries jurisdiction of the incidental demands. Buckner & Robinson vs. Baker, 11 La. 462; Hart vs. Lodwick, 8 La. 167; Colt vs. O'Callaghan, 2 An. 189; Guion vs. Brown, 6 An. 112.

A great portion of the voluminous testimony put into this record

George W. Taylor vs. Almanda & Bro.

is devoted to the propositions that defendants had no contract with plaintiff, but dealt with W. R. Taylor, and that neither owned the mill stipulated by the contract. All this testimony and the discussion on these points may be laid out of view. One may contract in his own name for another, who may sue to enforce it. Defendants are without interest to inquire into the relations between plaintiff and W. R. Taylor, which it is claimed accounts for the contract in Taylor's name, described as " agent." It is enough for defendants that, whether sued by Taylor or his alleged principal, they are deprived of no defence. The fact that at the date of the contract Taylor did not own the mill, had agreed to buy it for a price less than the defendants were to pay, can exert no influence on the main issue whether he executed his contract to deliver the mill to defendants.

The plaintiff who sues to enforce the commutative contract must show performance. Taylor's obligation was to deliver, i. e., ship the mill and appurtenances. Defendants were to pay part cash and the residue in sixty days, and the final payment when the mill was erected. It is claimed by plaintiff there was no default because the mill had to be taken down and prepared for shipment on the plantation. That it seems to us furnishes no answer to Taylor's entire omission to pay for the mill he had bound himself to furnish until defendants' action compelled that payment by him; nor is it less impressive on this branch of the case that in the long interval from the date of the contract to the compelled payment, the mill owner refusing delivery without payment, was under the impression the delay in paying him was owing to defendants' failure in their payments to Taylor, when in point of fact he had received a sum from defendant in excess of the requirement of their contract. Obtaining their money on the faith of his contract, and not paying a dollar on the mill until their action brought forward the mill owner, and constrained payment to him, exposed defendants not only to the risk of serious injury to their crop dependent on the mill, but to the loss of their money in his hands, and to serious annoyance and trouble. All this we must consider in connection with the issue he tenders of the faithful execution of his contract. He stands in a still more unfavorable attitude in respect to the mill appurtenances. All he did toward executing that part of his contract was to employ the machinist. He says he paid him, but in this he is directly contradicted

by the testimony of the machinist, if we do not err in our appreciation of that testimony. It is quite certain Taylor never obtained the machinery, nor made the slightest effort to get it. It is equally certain the machinist would not deliver without payment, and defendants had to give their notes afterward, providing money for the payment, to get the machinery included in his contract and indispensable to the mill. In his account he credits defendants with the notes, not at all consistent with his attempt to seize their money forwarded to pay the notes. But the credit is not the equivalent of performance of his contract. In our opinion the plaintiff fails on the issue of performance of his contract.

Our attention has been directed to the line of authorities that entitles the plaintiff to some recovery when he shows partial performance of the commutative contract. Our jurisprudence on the subject is defined. When there is a partial performance the recovery is not the contract price, but is measured by the benefit of the part performance. Loreau vs. Declouet, 3 La. 1; Etie vs. Sparks, 4 La. 465; Dyer vs. Seals, 7 La. 134. If it is claimed that the shipment of the mill, brought about by defendants' efforts to avert the serious consequences with which defendants were menaced by the course of W. R. Taylor, is part performance, we are confronted by the fact that defendants have paid out on the contract seven thousand two hundred and thirty-seven dollars, and that their notes are extant for one thousand seven hundred and seventy-five dollars for the machinery. This view omits all consideration of trouble and expense of defendants, well calculated to grow out of the course of W. R. Taylor in reference to this contract. We fail to find in the record the basis of benefit derived by defendant, on which we can adjudge defendants liable over and above the amounts paid and that for which they have become liable by reason of the contract.

The conventional demand of the defendants is not pressed. The demand of plaintiff for machinery beyond that embraced in his contract is not exhibited by the testimony, not at least with the certainty on which we can have any judgment. It appears that in an effort to adjust the claim for this extra machinery it was proposed to award five hundred dollars for that claim. It does not appear that defendants assented to it, and plaintiff does not claim the award. In our view on this part of the case there should be a judgment of non-suit.

To maintain the attachment of the funds levied on in this case, it is urged the note holders for whom defendants made the remittance acquired no right to the funds merely by the remittance. Armor vs. Cockburn, 4 N. S. 667; Oliver vs. Lake, 3 An. 78; Hill, McLean & Co. vs. Simpson, 8 An. 45. Our conclusion that plaintiff has no demand against defendants renders unimportant· the discussion of his right˜to attach the funds under the circumstance of the remittance; but it is not inappropriate to say the applicability of the funds to pay the notes and the exclusion of any interference by the plaintiff's attachment rests on grounds beyond the scope of the authorities that maintain the creditors' right to attach until the owner of the property has lost control. The notes were given to the machinist to pay the debt that should have been paid by Taylor, and the money is remitted to pay the notes. Of this he was well aware and has treated the notes as payment of the debt he owed the machinist by giving defendants credit for the‘notes. His attachment in effect seeks to defeat the payment of his own debt, the provision for which was made with full knowledge and of the benefit of which he has availed by the credit he gives. Again, if his attachment prevailed, his attachment as a breach of duty to plaintiffs would be attended with the serious consequence of leaving them liable on their notes. Still less can an attachment be maintained by one who has contributed to bring the funds within that jurisdiction by influencing the owner to send here for a purpose the attachment would completely defeat.

It is therefore ordered, adjudged and decreed that as to plaintiff's demand in his supplemental petition for "extra" or additional machinery there be judgment of non-suit, and in all other respects the judgment of the lower court be affirmed with costs.