BLANCHARD v. SONNEFIELD et al.

(Circuit Court of Appeals, Fifth Circuit. May 31, 1902.)

No. 1,145.

1. BUILDING CONTRACT—CONSTRUCTION—DEFENSE TO ACTION FOR CONTRACT PRICE.

A contract for the construction of a building provided that payment should be made in five installments,—four as the work progressed, and the fifth 15 days after the building was all complete, delivered, and accepted; said payment to be made on the certificate of the architects; "said certificate to be final and conclusive that the work done warranted said payments." The contract further provided that the work

should be done in strict accordance with the plans and specifications, and that the building should be delivered clean, in good condition, and complete; "it being understood that the works shall be at our [contractors'] risk until accepted by you or your assigns as a whole." *Held*, that under such contract the owner was entitled to have the building delivered in good condition, completed according to the specifications, and that he was not precluded by certificates given by the architects for partial payments from pleading and proving in reconvention, in an action to recover the final payment, his damages sustained by the failure to deliver it in such condition, whether the defects complained of were in work done before the last of such certificates was given or not; it not appearing that a certificate for the final payment had been given.

In Error to the Circuit Court of the United States for the Western District of Louisiana.

This, action was brought by Sonnefield & Emmins, defendants in error here, a firm composed of H. J. Emmins, G. W. Sonnefield, and R. W. Abright, citizens of Texas, against James A. Blanchard, plaintiff in error here, a citizen of Louisiana. The suit is to collect the last payment on a contract to build a house. Plaintiffs averred that they had erected the house and completed it as required by the contract, and that it had been accepted, and is now occupied by the defendant and his tenants. The defendant answered, admitting the contract, and denying that the plaintiffs had completed the house pursuant to the contract and the specifications. The defendant designated a number of particulars in which the building was defective, and in which plaintiffs failed to comply with the specifications, and concluded by averring that by the failure of the plaintiffs to construct the building according to their contract the defendant has been damaged in the sum of $5,000, which amount is due him, "and for which sums he prays judgment in reconvention." The case was tried on those issues. The contract sued on is made an exhibit to the petition, and is as follows:

"State of Louisiana—Parish of Caddo.

"Know all men by these [presents] that we, Sonnefield & Emmins, builders and contractors, have this day entered into the following contract with Dr. Jas. Ashton Blanchard:

"(1) We agree to erect and finish in a perfect and workmanlike manner for said Blanchard, on the following lot of ground situated in the city of Shreveport, La., viz., lot ten (10), block thirteen (13), in the city of Shreveport, La., the following buildings and improvements: A three-story brick building fronting on Milan street, in Shreveport, La., described in the plans and specifications prepared by Bridges & Snyder, architects.

"(2) We will do said work in strict accordance with the plans and specifications hereto annexed and made part hereof, and will furnish all the labor, tools, materials, and appliances necessary to do said work, and will deliver same to said Blanchard clean and in good condition, and complete, on or before the first day of November, 1901.

"(3) We will do said work for the price of nine thousand four hundred and eighty dollars, which said Blanchard agrees to pay as follows: First payment, eighteen hundred and ninety-six dollars ($1,896.00), to be made when the first-floor joists are in place; second payment, same amount dollars ($1,896.00), when the second-floor joists are in place; third payment, seventeen hundred and ninety-two dollars ($1,792.00), when the third-floor joists are in place; fourth payment, eighteen hundred and ninety-six dollars ($1,896.00), when the roof is on and the building inclosed; and the fifth payment fifteen days after the said building and works are all complete, delivered, and accepted by said Blanchard; said payment to be made on the certificate of Bridges and Snyder, architects; said certificate to be final and conclusive that the work done warranted said payments.

"(4) We also agree to take out an insurance policy in a good and solvent company, acceptable to said Blanchard, on said works, and keep the same fully insured at our expense up to the final delivery of said works to and

their acceptance by you or your assigns; and, at the time when the above several payments are made to us, we will transfer to you or your assigns an amount of said insurance corresponding with the amount of the payment then made, to indemnify you from loss in the event of fire before delivery to you of the works complete. It being understood that the works shall be at our risk until accepted by you or your assigns as a whole.

"(5) We furthermore agree that no new work of any description done on the premises, nor any work of any kind whatsoever, shall be considered as extra, unless a separate estimate in writing for the same before its commencement shall have been made by us to you, and your consent obtained thereto in writing.

"(6) Should any dispute arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by Bridges & Snyder, architects, and their decision shall be final.

"(7) We also agree that, should we fail to finish the work at or before the time agreed upon, we shall pay to or allow you, by way of liquidated damages, the sum of seven dollars per diem for each and every day thereafter the said works shall remain incomplete, and said damages shall be paid although works are partially completed.

"Done and signed in the city of Shreveport, Caddo parish, La., on this the 17th day of July, 1901.　　　　　　　Sonnefield & Emmins.
　　　　　　　　　　　　　　　　　　　　　　　"Jas. Ashton Blanchard."

It is shown that all the payments except the last one provided for by the contract had been made. Each of the four payments were made on the statement of the architects, their last statement being as follows:

　　　　　　　　　　　　　　"Shreveport, La., Oct. 4th, 1901.

"Dr. J. A. Blanchard: The fourth payment on building for you on Milam St. is now due, and we recommend payment of same. Amount of payment is seventeen hundred and ninety-two dollars ($1,792.00), to Messrs. Sonnefield & Emmins.　　　　　　　　　　Perry Bridges & Snyder.

"Oct. 5th. Received above. Sonnefield & Emmins."

It is not shown that any certificate was issued for the fifth payment.

The verdict and judgment were for the plaintiffs for $2,266, and the defendant sued out this writ of error.

Holbert & Barret and Henry P. Dart, for plaintiff in error.

Sutherlin & Hall, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

If it be true that the contractors failed to comply with their contract, that fact would not be a complete defense to their action. Under the law of Louisiana, a suit may be maintained upon a building contract, although the work be defective or unfinished; and the remedy of the defendant in such case is for reduction of the price agreed upon, to the extent of damages sustained by reason of the defective performance. Cairy v. Randolph, 6 La. Ann. 202; McClure v. King, 15 La. Ann. 220. In such case the defendant may reconvene for damages sustained by the contractor's failure to comply with his agreement. Hill v. Penny, 15 La. Ann. 212; Civ. Code La. art. 2769. By the terms of the contract, the contractors were to be paid in five different payments,—four as the work progressed. The fifth payment (the one involved in this suit) was to be made 15 days after the building and works are all completed, delivered, and accepted by Blanchard; "said payment to be made on the certificate of Bridges & Snyder, architects;

said certificate to be final and conclusive that the work done warranted said payments." In the second section of the contract the contractors agreed that they would do the work in strict accordance with the plans and specifications, and deliver the same to Blanchard, clean and "in good condition and complete, on or before the first day of November, 1901." Section 4 provided for an insurance policy on the property, to be procured by the contractors, and concludes with these words, "It being understood that the works shall be at our risk until accepted by you or your assigns as a whole." This idea is repeated in the specifications, made part of the contract, wherein the contractors agree to properly protect their work during its progress, and "to repair any damage to their work, and deliver the building broom clean and in perfect repair." Construing the contract as a whole, it requires the contractors to deliver the building completed according to the specifications and in perfect repair. The contract, we think, clearly shows that Blanchard was not required to receive the house in a defective condition; that it was to be delivered in good condition, completed according to the specifications. Such being the contract, Blanchard having interposed a plea that the plaintiffs had failed to construct the building according to their contract and the plans and specifications, and claiming to have been damaged by such failure in the sum of $5,000, it seems to us clear that he should have been permitted to offer proof tending to sustain his plea. It appears from the record that he offered to show by several witnesses the defective character of the building after it had been completed and tendered to him, and that this evidence was objected to on the part of the plaintiffs as to any work done prior to October 4th, when the last payment was made, for the reason that the defendant had paid the architects' estimate tendered him on October 4th. This objection was sustained by the court, and Blanchard excepted, and this ruling is assigned as error. If it be conceded—a question which we do not decide—that the certificate of the architects was conclusive as to the condition of the work at the time the payment was made on October 4th, that would not be sufficient to exclude the evidence, for by the terms of the contract the work as a whole must be in good condition when Blanchard is called on to accept it. The record does not show that the certificate calling for the fifth and last payment was ever issued by the architects. The fifth payment was to be made on that certificate 15 days after the building and works are all complete, delivered and accepted by Blanchard. The certificate authorizing the fifth payment is the only one which was to relate to the condition of the building at the time it was to be delivered and accepted. The evidence offered and rejected tended to show that the contractors had not completed the house according to the contract, and that they did not deliver it to Blanchard completed and in perfect repair. It was admissible on the issues raised by Blanchard's general denial of the plaintiffs' petition, and also to support his reconvention. We think the circuit court erred in refusing to receive the evidence offered.

The judgment of the circuit court is reversed.